**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN EDWARD HUMENIK, | ) | |
| | ) | Civil Action No. 10-341 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | District Judge Mark R. Hornak |
| | ) | |
| GERALD L. ROZUM, Superintendent; | ) | Magistrate Judge Cynthia Reed Eddy |
| DISTRICT ATTORNEY FOR THE | ) | |
| COUNTY OF ALLEGHENY; and the | ) | |
| ATTORNEY GENERAL FOR THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.  REPORT

Petitioner, John Edward Humenik, a state prisoner incarcerated at the State Correctional Institution at Somerset, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his convictions on several counts of Involuntary Deviate Sexual Intercourse and related charges. For the reasons that follow, the Petition should be denied as without merit.

#### A. Relevant Factual and Procedural History

On direct appeal, the Superior Court set forth the following relevant factual history.

John Humenik ("Humenik") appeals from the judgment of sentence imposed after he was convicted of involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, sexual abuse of children, unlawful contact with a minor, endangering the welfare of children and corruption of minors. We affirm.

Humenik was arrested on February 2, 2002, after his daughter revealed that she had been sexually abused by Humenik from the time that she was five years old until she was thirteen years old. At or around the time of Humenik's arrest, police officers searched his residence and seized film located in a photo lab. The police officers also executed search warrants for Humenik's computers at his residence, his place of employment and his mother's house. Images of child pornography were obtained from those computers.

Humenik filed omnibus pre-trial motions on February 6, 2004, and again on February 9, 2004, which the trial court denied. A non-jury trial was conducted on February 9th through 12th, 2004. During the course of the trial, the Commonwealth learned of the existence of the victim's handwritten journal. Upon receipt of the journal, the Commonwealth disclosed it to Humenik. The trial court offered Humenik a continuance in order to review the journal. However, Humenik declined the continuance. At the conclusion of the trial, Humenik was convicted of the above-listed crimes. On May 11, 2004, the trial court sentenced Humenik to a prison term of ten to twenty years.

ECF No. 12-5, pp. 27-28.

Petitioner filed a Notice of Appeal wherein he raised the following two claims.

I.     Did the trial court commit reversible error in failing to exclude evidence which was violative of the discovery rules?

II.    Did the trial court commit reversible error in failing to grant the defendant's omnibus pretrial motion?

ECF No. 12-4, p. 11.

On March 1, 2005, the trial court filed its Opinion affirming Petitioner's judgment of sentence (ECF no. 12-4, pp. 2-6). On February 23, 2006, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence (ECF no. 12-5, pp. 27-35). Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on August 23, 2006.

On March 27, 2007, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq.* Counsel was appointed and a "no merit" letter was filed with the PCRA Court. On January 8, 2008, the PCRA court dismissed the Petition. Petitioner filed a timely appeal wherein he raised the following claims

I.      Whether conflict counsel's no-merit letter is defective and should have been rejected by the PCRA court.

II.     Whether appellate counsel was ineffective for failing to raise the weight of the evidence claim on direct appeal.

On October 5, 2009, the Superior Court affirmed the dismissal of the PCRA Petition. Petitioner did not file a petition for allowance of appeal.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on March 15, 2010 wherein he raises the following claims.

I.      The trial court committed a reversible error when it failed to exclude evidence which was violative of the discovery rules;

II.     The trial court committed reversible error in failing to grant the defendant's omnibus pretrial motion to suppress the search of the marital residence; and

III.    Appellate counsel was ineffective for failing to raise the weight of the evidence claim on direct appeal.

**B. Standards Governing Federal habeas Corpus Review**

1.      <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state

*habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. At 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989);

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508

(3d Cir. 1987).[1]

A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. <u>Christy v. Horn</u>, 115 F.3d 201, 206 (3d Cir. 1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995). Moreover, a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. 28 U.S.C. § 2254(b)(2).

2.      Procedural Default Doctrine

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted, precluding a federal court from proceeding to address them further. In <u>Cone v. Bell</u>, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a

---

1 On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. <u>Wenger v. Frank</u>, 266 F.3d 218, 226 (3d Cir. 2001).

petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Cone, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Federal habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts. Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. Id. at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Amos v. Scott, 61 F.3d 333, 342 (5th Cir. 1995)). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases." Dugger v. Adams, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default

*and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

3.      Standard of Review for Exhausted (but not Procedurally Defaulted) Claims

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State Court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular ... case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the

Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).[2]

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)). Petitioner's claims will be reviewed in accordance with the standards set forth above.

### C. Petitioner's Claims

1.  Discovery Issue

Petitioner's first claim is that the trial court committed a reversible error when it failed to exclude evidence which was violative of the Pennsylvania discovery rules. Petitioner's first claim is "exhausted" for purposes of this Court's review as it was presented to all three levels of the state courts in his direct appeal. Notwithstanding, as noted by Respondents, this claim is based upon an alleged misapplication of Pennsylvania law. In his state court briefs, Petitioner raised this issue solely in terms of trial court error; he cited to no federal or constitutional authority in support of his claim. As a result, the Pennsylvania courts reviewed his claim under Pennsylvania law without any

_____

2. *See also* Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

analysis of constitutional principles. Specifically, the Superior Court determined this issue as follows.

In his first issue, Humenik argues that the trial court erred in failing to exclude evidence, which Humenik contends violated the discovery rules. Specifically, Humenik argues that the trial court should have excluded the victim's hand-written journal, as well as the testimony of David Wilson Woolf ("Woolf"). Humemk argues that the Commonwealth violated Pennsylvania Rule of Criminal Procedure 573 by failing to disclose this evidence. We disagree.

Rule 573 provides in pertinent part as follows.

(B) Disclosure by the Commonwealth.

(1)     Mandatory:  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

(b)  any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

. . .

(D) Continuing Duty to Disclose.  If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

(E) Remedy.  If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573.

Upon review, we conclude that the prosecutor's disclosure of the victim's hand-written journal during the course of the trial did not violate Rule of Criminal Procedure 573.  Humenik has not argued that the prosecutor or the police were in possession of the journal prior to the date of its production.  The Commonwealth is not required to produce evidence which was not in its possession.  In fact, disclosure of the journal satisfied the Commonwealth's continuing duty to disclose imposed

under Rule 573(D).

Moreover, Rule 573(E) allows the trial court to grant a continuance in the event of a party's failure to comply with the Rule. Pa.R.Crim.P. 573(E). Pursuant to Rule 573(E), the trial court enjoys broad discretion in formulating remedies for a failure to comply with discovery requirements. Accordingly, our standard of review of a trial court's action under this Rule is whether the trial court committed an abuse of discretion.

In this case. we discern no abuse of discretion on the part of the trial court. The trial court specifically offered to continue Humenik's trial to provide Humenik sufficient time to review the journal. However, Humenik declined the trial court's offer of a continuance. Humenik stated on the record that he wished to proceed to trial and that he was doing so freely, knowingly and voluntarily after consulting with his lawyer. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to exclude the victim's hand-written journal from evidence.

ECF No. 12-5, pp. 28-31 (some internal citations omitted).

It is well known that a state prisoner like Petitioner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). *See also* Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992). Because Petitioner's first claim is premised upon a violation of an discovery rule that is provided for under Pennsylvania law, it does not assert a viable basis for federal habeas corpus relief.

Moreover, Petitioner has failed to satisfy the exhaustion requirement in 28 U.S.C. § 2254 for any constitutional claim he seeks to raise. To this end, a petitioner must have "fairly presented" his

habeas claims to all levels of the state courts.  Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848.  To "fairly present" a claim for exhaustion purposes, "a petitioner must have presented a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (emphasis added), so that they had "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)).  *See also* Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-99 (3d Cir. 2007); Tome v. Stickman, 167 Fed. App'x 320, 322-323 (3d Cir. 2006) ("Fair presentation requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts.  Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.") (internal citation omitted).

It is not sufficient that all the facts necessary to support the federal claim were before the state courts.  Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).  Moreover, a mere "passing reference to a 'fair trial'" is insufficient to put the state court on notice that petitioner is asserting a federal constitutional claim.  *Id*. at 415.  "If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the

Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* at 366. *See also* <u>Baldwin</u>, 541 U.S. at 32 ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion, that does so."). *See also* <u>Daye v. Attorney General of New York</u>, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*).[3]

Petitioner did not assert a violation of a federal or constitutional right; nor did he assert his claim in terms that bring to mind a constitutional right. Moreover, in his pleadings in the state courts, he cited only Pennsylvania authorities. Because Petitioner did not present a constitutional challenge to the state courts, he has failed to comply with the exhaustion requirement in 28 U.S.C. § 2254, a necessary prerequisite to habeas corpus review. Moreover, Petitioner cannot now raise any constitutional challenge associated with his discovery claim due to the eligibility requirements for obtaining post-conviction relief in Pennsylvania. *See* 42 Pa. Cons. Stat. § 9543(a)(2). Consequently, the procedural default doctrine prohibits this Court from reviewing any constitutional challenge at issue in Petitioner's first claim.

Finally, even if the Court were to assume for the sake of argument that Petitioner fairly presented to the Superior Court a claim that the trial court violated his federal due process rights, Petitioner would not be entitled to relief in federal habeas. In this regard, a claim that one was denied "due process" is a claim that one was denied "fundamental fairness." *See* <u>Riggins v. Nevada</u>,

---

3    In <u>Daye</u>, the court recognized that the more specifically a right is described, "the more easily alerted a court will be to consider a constitutional constraint." 696 F.2d at 193. By contrast, a claim described in "very broad terms," like the "denial of a fair trial," may not be fairly presented to a state court for purposes of exhausting a federal due process claim. *Id.* "Fair trial," after all, is a concept that embraces "many concrete notions," some fundamental and some not; not every event accurately

504 U.S. 127, 149 (1992) ("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial'"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"). When reviewing claims alleging the denial of due process, the Supreme Court has cautioned that:

> [i]n the field of criminal law, we have defined the category of infractions that violate 'fundamental fairness' very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order. . . . [I]t has never been thought that decisions under the Due Process Clause establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.

Medina v. California, 505 U.S. 437, 443 (1992) (internal quotations and citations omitted).

> Judges are not free, in defining 'due process,' to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

Dowling v. United States, 493 U.S. 342, 353 (1990) (internal quotation and citations omitted).

Moreover, a federal court must keep in mind the standard of review to be applied to allegations of trial error. In this regard, criminal defendants in this country are entitled to a fair, but not a perfect, trial. "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one. United States v. Hasting, 461

described as "unfair" would violate the defendant's constitutional rights.

U.S. 499, 508 (1983) (internal citations omitted). This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

Petitioner's first claim is that the court committed reversible error when it failed to exclude evidence that allegedly violated the Pennsylvania discovery rules. As stated above, this Court is required to review Petitioner's claims in accordance with the standard of review set forth in AEDPA. Specifically, in order to be entitled to relief, Petitioner must show that the Pennsylvania Court's decision refusing to exclude the admission of the victim's journal was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[4] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted). The petitioner carries the burden of proof. *Id.*

---

4. Some circuit courts of appeals have restricted their review under AEDPA to United States Supreme Court decisions alone. *See, e.g.*, Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (considering itself barred from examining "lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law"). The Court of Appeals for the Third Circuit, however, has concluded that decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as "helpful amplifications" of that precedent. Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999)).

A state court decision fails the "contrary to" prong of AEDPA if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts. McMullen v. Tennis, 562 F.3d 231, 236 (3d Cir. 2009) (quotation and citations omitted). This Court has not discovered any Supreme Court case that has squarely considered this issue. Consequently, Petitioner cannot show that he is entitled to relief under the contrary to prong of AEDPA.

A state court ruling is considered an "unreasonable application" if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply. Harris v. Ricci, 607 F.3d 92, 96 (3d. Cir. 2010). The Superior Court decision is not an unreasonable application of clearly established federal law. Petitioner was not denied fundamental fairness as he was given the opportunity for a continuance to obtain rebuttal testimony as to the journal. Moreover, there is no indication that a more timely disclosure of the journal would have changed Petitioner's trial strategy. Neither on appeal to the lower courts nor in his habeas corpus petition, does Petitioner demonstrate that any distinct prejudice resulted from disclosure of the journal. Consequently, it cannot be said that the state court unreasonably applied clearly established Federal law. *Cf.* Carey v. Musladin, 549 U.S. at 75–76 (2006) (holding that, because there was no clearly established federal law to apply, the state court's determination cannot be held to be "unreasonable" under AEDPA). Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

2.    Suppression Issue

In his second issue, Petitioner asserts that the trial court committed reversible error in failing to grant the defendant's omnibus pretrial motion to suppress the search of the marital residence. Petitioner raised this claim on direct review where the Superior Court held as follows.

> In his second issue, Humenik challenges the denial of his suppression motion. Specifically, Humenik asserts that the trial court erred in failing to suppress evidence that resulted from the warrantless search of a "photo lab" in the basement of Humenik's marital residence. On February 4, 2002, Humenik's wife, who resided in the residence, gave detectives permission to search the residence. Humenik argues that his wife's consent to search the photo lab was invalid because the room was in his exclusive possession.

> In reviewing a trial court's denial of a motion to suppress, the appellate court's responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. When a defendant appeals a suppression court's ruling, we consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read In the context of the record as a whole. If there is support in the record for the court's findings, we may reverse only if the legal conclusions drawn from those facts are erroneous.

> . . .

> The Fourth Amendment protects individuals from unreasonable governmental intrusions into their 1egitiamte expectation of privacy. In determining whether an individual has a legitimate expectation of privacy, we must consider the totality of the circumstances. The expectation of privacy protected under the Fourth Amendment has been held to be greatest in one's home. Indeed, the United States Supreme Court has long recognized that the "physical entry of the home" is the chief evil against which the wording of the Fourth Amendment is directed. Furthermore, a warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement.

Commonwealth v. Gutierrez, 750 A.2d 906, 909 (Pa. Super. 2000) (citations omitted).

> It is well-settled that a warrantless search may be conducted with the voluntary consent of a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected."

Commonwealth v. Lowery, 451 A.2d 245, 248 (Pa. Super. 1982) (citing United States v. Matlock, 415 U.S. 164, 168 (1974)). A warrantless search of a family home made pursuant to the voluntary consent of a family member is valid unless the defendant manifested and exhibited intent to exclude other family members from the specific area searched. Commonwealth v. Gibbons, 549 A.2d 1296, 1301 (Pa. Super. 1988). "Absent such an intention, where there exists joint access or control, there can be no reasonable or legitimate expectation of privacy and thus, a warrantless search may be made with the voluntary consent of a third party." *Id.*

In denying Humenik's suppression motion, the trial court concluded that Humenik had no reasonable or legitimate expectation of privacy in the photo lab because the evidence did not support his contention that he manifested and exhibited an intent to exclude other family members from the photo lab. Upon our review of the record of the suppression hearing, the parties' briefs, and the applicable law, we conclude that the trial court's findings are supported by the record. We further conclude that the legal conclusions drawn by the trial court are free of error. Accordingly, we rely on the well-reasoned Opinion of the trial court in concluding that Humenik is not entitled to relief on this claim.

ECF No. 12-5, pp. 32-35.

For the reasons that follow, Petitioner's second claim is not cognizable in a federal habeas corpus action. In this regard, Petitioner's second claim is grounded in the Fourth Amendment, which assures the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Amendment was primarily a reaction to the evils associated with the use of the general warrant in England and the writs of assistance in the Colonies and was intended to protect the sanctity of a man's home and the privacies of life from searches under unchecked general authority. Stone v. Powell, 428 U.S. 465, 483 (1976). Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease. James v. Illinois, 493 U.S. 307 (1990). This "exclusionary rule" was a judicially created means of effectuating the rights secured by the Fourth

Amendment by prohibiting the use of illegally-obtained evidence in the government's direct case as substantive evidence of guilt. United States v. Havens, 446 U.S. 620, 628 (1980).

The Supreme Court specifically has held that the exclusionary rule is not a basis for habeas relief if the state afforded the defendant a full and fair opportunity to litigate his fourth amendment claim. Cardwell v. Taylor, 461 U.S. 571 (1983) (citing Stone v. Powell, 428 U.S. 465 (1976)); Deputy v. Taylor, 19 F.3d 1485 (3d Cir.), *cert. denied*, 512 U.S. 1230 (1994).

> A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty. Application of the rule thus deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice.

Stone v. Powell, 428 U.S. at 491 (citations omitted).

The habeas preclusion applies to a state court error in deciding the Fourth Amendment claim, Singletary v. Frey, 793 F.2d 212 (8th Cir.), *cert. denied*, 479 U.S. 934 (1986), *reh'g denied*, 479 U.S. 1047, and to a state court's determination that violation of a habeas petitioner's Fourth Amendment rights constituted harmless error. Gilmore v. Marks, 799 F.2d 51 (3d Cir. 1986) (rejecting argument that erroneous determination of habeas petitioner's Fourth Amendment claim overcomes Stone because that claim is really a due process violation), *cert. denied*, 479 U.S. 1041 (1987)). Thus, where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a federal court may not reexamine: 1) a state court's determination that no Fourth Amendment

violation occurred; 2) a state court's determination that a Fourth Amendment violation did occur; or 3) a state court's determination that a Fourth Amendment violation occurred but introduction of its fruits was harmless.

While the Court in <u>Stone</u> did not directly state what it means to have a full and fair opportunity to litigate a Fourth Amendment claim in state court, it cited <u>Townsend v. Sain</u>, 372 U.S. 293 (1963) in support of its determination. In <u>Townsend</u>, the Court held that a full and fair hearing does not occur if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; (6) for any reason the state trier of fact did not afford the habeas applicant a full and fair fact hearing. 372 U.S. at 313. The third Circuit has concluded that a habeas petitioner had an opportunity for full and fair litigation where the state court provided an opportunity for a pretrial suppression motion and the Superior Court considered the claim on appeal. <u>Reinert v. Larkin</u>, 211 F.Supp.2d 589, 597 (E. D. Pa. 2002), *aff'd*, 379 F.3d 76 (3d Cir. 2004), *cert. denied*, 546 U.S. 890 (2005).

The instant record reveals that Petitioner had a pretrial hearing regarding his suppression motion after which the trial court concluded that the search was lawful and the evidence admissible. Petitioner raised this issue on direct appeal and the Pennsylvania Superior Court considered all of his Fourth Amendment claims on appeal. As Petitioner had an opportunity for a full and fair litigation of his Fourth Amendment claims, this claim is barred by <u>Stone</u>. *Accord* <u>Marshall v. Hendricks,</u> 307

F.3d 36, 82 (3d Cir. 2002); <u>Ascenzi v. Erickson</u>, Civil No. 3: 04-2714, 2007 WL 1598978, *6 (M. D. Pa. June 1, 2007) (holding that petitioner's multifaceted Fourth Amendment challenge to the search warrant (insufficiency of probable cause affidavit based on false testimony of state witnesses and violation of the knock and announce rule) did not provide him with an avenue for federal habeas corpus relief as he was afforded a full and fair opportunity to litigate this matter in state court).

3.    <u>Ineffective Assistance of Counsel</u>

Petitioner's third claim is that appellate counsel was ineffective for failing to raise the weight of the evidence claim on direct appeal.  The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993) (*quoting* <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984)).  *See also* <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.  The first prong of the <u>Strickland</u> test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>Strickland</u>, 466 U.S. at 688.  The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  <u>Strickland</u>, 466 U.S. at 689.  A defendant is not entitled to relief

unless he makes both showings. *Id.* at 687. The Strickland standard applies equally to appellate counsel. <u>Smith v Robbins</u>, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in <u>Strickland</u>, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under <u>Strickland</u> is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. <u>Berryman</u>, 100 F.3d at 1095. In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id.* Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id.*

In addressing this issue, the Pennsylvania Superior Court found as follows.

> In his second issue, Appellant alleges ineffective assistance of trial and appellate counsel for failure to file post-sentence motions in order to preserve and appeal a challenge to the weight of the evidence. In making this claim, Appellant alleges the existence of a viable weight-of-the-evidence challenge arguing that the testimony introduced by the victim and her mother was fraught with inconsistencies. He further avers that the victim simply was not credible since she, at a very young age, had accused her brother of inappropriate touching, denied having previously reported that Appellant also molested her brother and cousin, and was unable to pinpoint any dates or times when the sexual abuse occurred.
>
> . . .
>
> . . . The Honorable Robert E. Colville presided over Appellant's trial and sentencing and is now a member of this Court. In his stead, the Honorable David R. Cashman authored the Pa.R.A.P. 1925(a) opinion herein and concluded that the verdict was not contrary to the weight of the evidence.
>
> > A review of the record . . . provides ample support for the verdict rendered by Judge Colville. Judge Colville determined that certain counts filed against Humenik were not proven beyond a reasonable doubt and found him not guilty as to those counts. The verdicts on the remaining counts certainly do not shock the conscience of this

Court. The evidence reflects that that Humenik sexually abused his daughter for many years. What Humenik apparently perceives as a verdict against the weight of the evidence was the initial reluctance of his daughter to reveal to the world that her father was sexually abusing her. While there are inconsistencies in the testimony of the victim and her mother, those inconsistencies are not such as to cause a rejection of that testimony. In fact, Judge Colville found that the victim's testimony was extremely credible, and this Court found nothing in the record to refute that conclusion. Accordingly, Humenik's second assertion of error is without merit.

. . . We agree with the PCRA Court's assessment; hence Appellant's claim of ineffectiveness fails.

ECF No. 10-6, pp. 34-36 (internal citations omitted).

In the instant action, Petitioner has failed to demonstrate that his attorney's failure to raise a weight of the evidence claim fell below "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688. More importantly, he has failed to show that the Pennsylvania Courts' determination in this regard is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. In this regard, it long has been held that trial counsel is not ineffective for failing to make a meritless claim. Strickland, 644 U.S. at 691; Almeida v. Jeffes, 566 F. Supp. 852 (E.D. Pa. 1983) (petitioner is not entitled to habeas relief for ineffective assistance when counsel fails to object to properly admitted evidence). Nor has he shown that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, he has not demonstrated that he is entitled to relief on this claim.

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. ' 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

III.    <u>**CONCLUSION**</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. ' 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

<u>/s Cynthia Reed Eddy</u>
Cynthia Reed Eddy
January 12, 2012                                     United States Magistrate Judge

John Edward Humenik
FT6251
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510